UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| L.C. BROWN,  )<br>  )<br>  Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>JAMES JONES, SCDC EMPLOYEE CORRECTIONAL)<br>OFFICIAL,  )<br>  )<br>  Defendant.  )<br>_____) | C/A No. 4:14-1758-TLW-TER<br><br>Report and Recommendation |

**PROCEDURAL BACKGROUND**

The Plaintiff filed this action under 42 U.S.C. § 1983[1] on May 2, 2014, alleging violations of his constitutional rights. Plaintiff is currently incarcerated at Lee Correctional Institution ("LCI"). At all times relevant to the allegations in the complaint, Plaintiff was housed at the Leiber Correctional Institution ("LCI"). Defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment along with a memorandum, affidavit, and exhibits in support of said motion. (Document #62). Because Plaintiff is proceeding pro se, he was advised on or about April 2, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on April 15, 2015, Defendant filed a reply on April 27, 2015, and Plaintiff filed a sur reply on May 14, 2015. (Docs. #65, #66, and #68).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## **STANDARD FOR SUMMARY JUDGMENT**

As previously stated, the Defendant filed a motion to dismiss, or alternatively for summary judgment. As matters outside of the pleadings were submitted by the parties, the undersigned will treat this motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-

moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## DISCUSSION

### ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

Plaintiff alleges that Defendant violated his constitutional rights as a result of an incident on May 1, 2012, in which chemical munitions were dispersed by Sgt. Jones into Plaintiff's cell. As a result of the allegation of excessive force, Plaintiff seeks monetary damages. Defendant argues

3

Plaintiff was not subjected to excessive force in violation of the Eighth Amendment and that he is entitled to qualified immunity. In Plaintiff's response to summary judgment he reiterates the allegations in his complaint arguing that the use of chemical munitions was not necessary and that Defendant failed to comply with the SCDC policy and procedure when an inmate fails to obey an order.[2]

In support of the motion for summary judgment, Defendant submitted the affidavit of Sgt. James Jones who attests that he has been employed with LCI since 2007 and attached a copy of the report related to the May 1, 2012, incident as maintained in the ordinary course of business at LCI as Exhibit A. (Doc. #62-1). Jones asserts that he followed policy and procedure when engaging Plaintiff. Id. During the early morning hours of May 1, 2012, Jones was escorting Brenda Fields, RN, through the SMU B-wing and assisting with passing out medications to inmates housed on the wing. Id. Plaintiff was housed on the SMU B-wing at the time. Id. Prior to the alleged incident, Plaintiff had received medical forms which he was requested to complete. Id. When RN Fields and Jones approached Plaintiff's cell, Fields requested that Plaintiff return the medical forms that had been provided to him. Id. Plaintiff showed the medical forms to RN Fields, which were not filled out and were incomplete. Id. RN Fields then instructed Plaintiff that the medical forms had to be completed and returned to medical. Id. Plaintiff relayed to RN Fields that it was not his job to fill

---

[2] As Plaintiff attempts to assert a claim under § 1983 for an alleged failure by Defendant to follow SCDC policies or rules, the claim fails. "The failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation." Johnson v. S.C. Dep't of Corrections, No. 06–2062, 2007 WL 904826, at *12 (D.S.C. Mar.21, 2007) (*citing* United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1978)); see also Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990) (if state law grants more procedural rights that the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

out the medical forms. Id. Jones was subsequently contacted by RN Rachel Laddaga and was told that the medical forms needed to be retrieved and returned to medical if Plaintiff was not going to complete the forms. Id. Jones returned to Plaintiff's cell and directed Plaintiff to return the medical forms. Id. Plaintiff refused Jones' directive and refused to return the forms to Jones. Id. In accordance with procedure, Jones dispersed one burst of chemical munitions into Plaintiff's cell through the cell window flap. Id. Jones did not disperse the chemical munitions directly at Plaintiff's person, and Plaintiff used his mattress and sheets to block some of the effects of the spray. Id. Immediately after the chemical munition disbursement into Plaintiff's cell, medical staff was notified and RN Fields assessed Plaintiff shortly after the incident. Id. In accordance with procedure, Jones used only the amount of chemical munitions necessary to ensure institution security and gain compliance with Plaintiff when he refused to comply with the directive. Id. Jones never witnessed Plaintiff suffering any injury or illnesses as a result of the exposure to the chemical munitions he dispersed on May 1, 2012. Id. Jones denies the Plaintiff's allegations of civil rights violation and all other applicable federal and/or state violations contained in the complaint. Id.

Defendant also submitted the affidavit of Brenda Fields, RN who attests that her previous married name was Brenda Fogle and she is a Registered Nurse in the State of South Carolina. (Doc. #62-2). At all times relevant to the complaint, Fields worked at LCI. Id. Nurse Fields attached a copy of the medical summary notes for Plaintiff that are maintained in the ordinary course of business at LCI as Exhibit B. Id. During the early morning hours of May 1, 2012, Fields was escorted by Sgt. James Jones through the SMU B-wing while passing out medications to inmates housed on the wing. Id. At the time of the incident alleged, Plaintiff was housed on the SMU B-wing. Id. Prior to the incident, Plaintiff had been provided medical forms, which he was requested

to complete. Id. When she and Sgt. Jones approached Plaintiff's cell on May 1, 2012, Fields asked Plaintiff to return the medical forms that had been provided to him. Id. Plaintiff showed the medical forms to Fields and they were not filled out and were otherwise incomplete. Id. Fields instructed Plaintiff that the medical forms had to be completed and returned to medical. Id. Plaintiff stated that it was not his job to fill out the forms and that he was not going to complete the forms. Id. Later that same day on May 1, 2012, Fields assessed Plaintiff shortly after he was exposed to chemical munitions and found him to be in no distress or otherwise suffering from the exposure to chemical munitions. Id. Plaintiff was speaking without difficulty and had regular and unlabored respirations with no shortness of breath. Id. Fields attests that she encouraged Plaintiff to flush his eyes and face with cold water. At no point on May 1, 2012, was Plaintiff denied medical care for the exposure to chemical munitions or otherwise. Id.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 599 U.S. 34, 37 (2010). The Eighth Amendment analysis requires inquiry at to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, supra.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. (Id.) (internal quotation marks

6

omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidence." Wilkins v. Gaddy, supra, (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. at 322. In Whitley, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321 (1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. 1175, 1178. See also Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).[3]

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. See,

---

[3] While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins , 130 S.Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

7

e.g., Bailey v. Turner, 736 F.2d 963, 969-70 (4th Cir.1984)(prison officials may use mace to compel the obedience of a recalcitrant prisoner). The Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams, 77 F.3d at 763 (internal quotations marks and citation omitted). Accordingly, although it is not *per se* unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." Bailey, 736 F.2d at 969.

In this case, there is no dispute that Defendant used chemical munitions in Plaintiff's cell. The need for the application of mace and circumstances giving rise to Defendant's use of mace are disputed. Defendant asserts that Plaintiff refused to obey a direct order to return medical forms that had been requested by medical. The medical records note that Plaintiff "refused to return the Westmark Preop Questionnaire. States 'I don't have it, I flushed it down the commode.'" (Doc. #62-2, Exhibit B). Plaintiff argues that Defendant was trying to give him the forms as he did not already have them, but he was refusing to take them because Defendant should not have had possession of his medical forms. However, there is no dispute that Plaintiff refused to follow a direct order from Defendant.

Considering the first and second prong of the Whitley factors and the guidance from Williams, Plaintiff's allegations do not support a claim of excessive force. There is no evidence that demonstrates that any perceived malice was directed at the Plaintiff. Defendant administered one

8

burst of chemical munitions into Plaintiff's cell when Plaintiff refused to obey an order. It appears the need for force and the amount of force used was not unreasonable. Beyond his own allegations, Plaintiff provided insuffient that he was injured by the exposure to chemical munitions.[4] The medical records reveal Plaintiff was assessed by Nurse Fields shortly after the chemical munitions were dispersed, and there was no distress, suffering or injury as a result.

Additionally, the court "must accord due deference to an officer's efforts to restrain [an inmate] when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" Scarbro v. New Hanover County, 374 F. App'x 366, 370 (4th Cir.2010) (unpublished) (quoting Gravson v. Peed, 195 F.3d 692, 697 (4th Cir.1999)). Thus, the allegations are not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used against the plaintiff in this instance. Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The

---

[4] Plaintiff references prior cataract surgery but produces no competent evidence that the chemical munitions in any way caused injury to this condition.

Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials. Accordingly, the Defendant should be granted summary judgment on this claim.

**Qualified Immunity**

Defendant denies that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendant asserts that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, he is entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at

> the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent."  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, the Plaintiff fails to show that Defendant violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendant is entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to this Defendant.

**Pendent Jurisdiction**

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)

### CONCLUSION

Based on the above reasoning, it is RECOMMENDED that Defendant's Motion for Summary Judgment (document #62) be GRANTED.

Further, it is RECOMMENDED that all outstanding motions be deemed MOOT.[5]

---

[5] To the extent Plaintiff's motion to amend his complaint is not moot, it should be denied as it was filed outside the scheduling order.

11

                Respectfully submitted,

                s/Thomas E. Rogers, III
June 3, 2015           Thomas E. Rogers, III
Florence, South Carolina      United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**